**9**

**C. Anthony Hughes SBN: 250998**
**Gabriel E. Liberman SBN: 303010**
Hughes Financial Law
1395 Garden Highway, Suite 150
Sacramento, CA 95833
Ph:  (916) 485-1111
Fax: (916) 720-0255
E-mail: attorney@4851111.com

Proposed Attorney for
Hendrickson Trucking, Inc.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF CALIFORNIA
## SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>**HENDRICKSON TRUCKING, INC.**<br><br><br>DEBTOR | ) Case No.: 2015-24947<br>) Chapter 11<br>) DCN:  CAH-002<br>)<br>) **DECLARATION OF ALBAN LANG**<br>) **SUPPORT OF MOTION TO APPROVE**<br>) **STIPULATION BETWEEN THE**<br>) **DEBTOR AND TAB BANK FOR USE OF**<br>) **CASH COLLATERAL AND DEBTOR-**<br>) **IN-POSSESSION FINANCING ON A**<br>) **SENIOR, SECURED, AND SUPER-**<br>) **PRIORITY BASIS**<br>)<br>) **Date**:      June 23, 2015<br>) **Time**:     9:30 AM<br>) **Location**:  United States Courthouse<br>)              Dept. B, Courtroom 32<br>)              501 I Street, Sacramento<br>)              6th Floor<br>)<br>) Judge:  Honorable Christopher Jaime |

Hendrickson Trucking, Inc., the Debtor in Possession herein, hereby submits this

Declaration of Alba Lang in Support of the MOTION TO APPROVE STIPULATION

BETWEEN THE DEBTOR AND TAB BANK FOR USE OF CASH COLLATERAL AND

DEBTOR-IN-POSSESSION FINANCING ON A SENIOR, SECURED, AND SUPER-PRIORITY BASIS:

I, Alban Lang, declare as follows as

1. I am the Vice President and Chief Financial Officer for Hendrickson Trucking, Inc., and the authorized signer of Debtor's Chapter 11 Petition which was filed voluntarily on June 19, 2015;

2. My declaration is made in support of Debtor's MOTION TO APPROVE STIPULATION BETWEEN THE DEBTOR AND TAB BANK FOR USE OF CASH COLLATERAL AND DEBTOR-IN-POSSESSION FINANCING ON A SENIOR, SECURED, AND SUPER-PRIORITY BASIS;

3. The Debtor has retained possession of its property, and continues the operation and management of its business as debtor-in-possession.  No trustee, examiner or committee, official or unofficial, has been appointed in this Bankruptcy Case.

4. At issue in this motion is the cash collateral generated from Debtor's trucking business.

5. Prior to the Petition Date, TAB Bank made certain loans to the Debtor more particularly described as follows:

   a. An Accounts Receivable Financing and Security Agreement dated April 7, 2006, which was amended pursuant to that certain Amended and Restated Accounts Receivable Financing and Security Agreement dated March 13, 2009 (the "A/R Loan"), a true and correct copy of which is attached hereto as Exhibit "A".  The balance owed by the Debtor on the A/R Loan was at least $2,056,186.81 as of May 31, 2015, exclusive of legal fees and costs.  The A/R loan is secured by a senior, first-in-priority lien on all assets of the Debtor, as evidenced by that certain UCC-1 financing statement recorded on April 3, 2006, as Instrument No. 06-7064863060 (a

true and correct copy of which is attached hereto as Exhibit "B"), and which was continued pursuant to that certain UCC-3 continuation statement recorded on March 3, 2011, as Instrument No. 28152540002 (a true and correct copy of which is attached hereto as Exhibit "C").

b.  That certain Business Loan Agreement entered into between the Debtor and TAB Bank on or about July 30, 2008, in the principal amount of $1,005,000.00, a true and correct copy of which is attached hereto as Exhibit "D" (the "Real Estate Loan"). The Real Estate Loan is evidenced by a Promissory Note dated July 30, 2008 (the "Note"), a true and correct copy of which is attached hereto as Exhibit "E".  The Real Estate Loan is secured by a senior, first-priority deed of trust in favor of TAB Bank and encumbering the Debtor's real estate located at 7080 Florin Perkins Road, Sacramento, California (the "Florin Road Property").  That deed of trust (the "Deed of Trust"), a true and correct copy of which is attached hereto as Exhibit "F", was recorded in the Official Records of Sacramento County on February 23, 2009, as Document No. 20090223.[1]

c.  An equipment loan with an estimated balance owed as of the Petition Date of $443,055.00 that had an original loan balance of $2,003,500.00 as of the original loan date of 3/23/2007 Loan Number 500033261.

d.  The Real Estate Loan, the A/R Loan and the Equipment Loan (collectively, the "Pre-Petition Loans") are cross-collateralized.  The unpaid balance of all of the Pre-

---

[1] Ward and William Hendrickson, principals of the Debtor, executed Commercial Guaranty agreements in favor of TAB Bank, whereby they personally guaranteed the Debtor's obligations under the Real Estate Loan.  Each also signed a Continuing Guaranty and Waiver with respect to the Debtor's obligations under the A/R Loan. These guaranties are hereinafter collectively referred to as the "Guaranties". Each of these guarantors is hereinafter referred to as a "Guarantor".

Petition Loans was $4,301,001.35 as of May 31, 2015, exclusive of legal fees and costs (collectively, the "Pre-Petition Obligations").

6.  By this motion, Debtor seeks the Court's approval of the material provisions of the Stipulation relating to the commencement of use of cash collateral on an interim basis pedning a final hearing. The Debtor cannot continue to operate unless it can use the Pre-Petition Collateral in the ordinary course of its business to pay its administrative priority obligations.

7.  In addition, the Debtor seeks to obtain post-petition financing from TAB Bank on the same terms and conditions as set forth in the Pre-Petition Loan Documents and the terms of this Stipulation.  The Debtor requires continued use of the TAB Bank credit facility post-petition for cash flow in the course of its business operations.

8.  The Stipulation contains the following material provisions:

**I. CASH COLLATERAL**

A.  **Use of Cash Collateral.**  Through the end of the final hearing on approval of this Stipulation (the "Final Hearing"), the Debtor shall continue to operate its business and continue to bill accounts receivable in the ordinary course of business and is authorized to use cash, accounts, negotiable instruments and any other property comprising "cash collateral" within the meaning of Bankruptcy Code Section 363(c), including proceeds of any portion of the Pre-petition Collateral and Cash Collateral.  Such usage shall only be in the amounts and for the purposes specified in the budget, a true and correct copy of which is attached hereto as Exhibit "G" and incorporated herein by this reference (the "Budget").  The Debtor's authorization to use Cash Collateral shall terminate at the conclusion of the Final Hearing, absent further order of this Court.

B.  **Adequate Protection.**  As adequate protection for and to the extent of any diminution in value of its interest in the Cash Collateral resulting from (a) the use of Cash Collateral pursuant to Bankruptcy Code Section 363(c); and (b) the use, sale or lease of Pre-petition Collateral other than Cash Collateral:

1.  Effective upon entry into this Stipulation and without the necessity of

executing security agreements, financing statements or other such documentation, TAB Bank is hereby granted replacement security interests and liens in and to all of the Debtor's post-petition assets including, without limitation, all of the Debtor's cash, accounts, accounts receivable, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter of credit rights, commercial tort claims, investment property, and books and records relating to any assets of the Debtor and all proceeds (including insurance proceeds) of the foregoing, whether in existence on the Petition Date or thereafter created, acquired or arising and wherever located (all such property being collectively referred to hereinafter as the "Replacement Collateral") as adequate protection to the extent of any use, sale or lease of any Pre-Petition Collateral or post-petition collateral (hereinafter collectively, the "Collateral") by the Debtor. Such liens are referred to herein as the "Adequate Protection Liens" and shall not attach for purposes of this Stipulation to Avoidance Actions or Avoidance Action Proceeds.

2.      Nothing herein shall be deemed to be a waiver by TAB Bank of its rights to request additional or further protection of its interest in any property of the Debtor. TAB Bank shall be deemed to have reserved all rights to assert entitlement to the protections and benefits of Bankruptcy Code Section 507(b) in connection with any use, sale, or other disposition of any of the Collateral, to the extent that the protection afforded by this Stipulation to TAB Bank's interests in any Collateral proves to be inadequate.

3.      The extent, validity and priority of the Adequate Protection Liens shall be equal to the extent, validity and priority of TAB Bank's Pre-Petition Liens on the Collateral as of the Petition Date.

4.      Reporting. On the tenth day following the end of each business week commencing with the week ending June 26, 2015, through and including the week in which the Final Hearing takes place, the Debtor shall provide TAB Bank with the following reports for the previous week:

a.      Budget variance reports showing collections and expenditures by the

same categories set forth in the Budget.

      b.    Accounts receivable by 30-day age grouping.

      c.    Sales.

      d.    Inventory.

In addition, the Debtor will provide TAB Bank with a copy of its monthly general account statements within five business days of receiving same.

C.    **Automatic Perfection of Liens.**  The Adequate Protection Liens shall be deemed valid, binding enforceable and perfected to the same extent and priority as TAB Bank's Pre-Petition Liens.  TAB Bank shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or to take any other action (including possession of any of the Replacement Collateral) in order to perfect any of the Adequate Protection Liens.  If TAB Bank chooses, in its discretion, to file any such mortgages, deeds of trust, security deeds or UCC-1 financing statements, or take any other action to perfect any part of the Adequate Protection Liens, the Debtor and its officers shall cooperate by executing any documents or instruments that TAB Bank shall reasonably request, and all such documents and instruments shall be deemed to have been filed or recorded at the time and on the date of entry of the Parties into this Stipulation.  TAB Bank may, in its sole discretion, file a certified copy of this Stipulation in any filing office in each jurisdiction in which the Debtor is organized or has or maintains any office or Replacement Collateral, and each filing office is directed to accept such certified copy of this Stipulation for filing and recording without the imposition of any stamp, intangibles, recording or similar tax in accordance with the provisions of Bankruptcy Code Section 1146.

## II. DEBTOR-IN-POSSESSION FINANCING

A.    **No Lending Requirement.**  TAB Bank is not hereby obligated to extend credit of any sort to the Debtor.  However, to the extent any credit is extended to the Debtor, TAB Bank's interests, rights and remedies shall be governed hereby and by the Loan Documents.

B.    **Collateralization.**

1.     The Debtor acknowledges and stipulates that, as security for all Post-Petition Indebtedness, TAB Bank shall and does have a first-priority, senior, secured and priming lien against all Post-Petition Collateral, senior to all claims and liens of any kind, whether now existing or existing in the future, including but not limited to those referenced under Sections 364 and 507 of the Bankruptcy Code.  TAB Bank's security interests in and liens on the Pre- and Post-Petition Collateral are and will be properly perfected and are and will be valid and enforceable first priority liens on and security interests in the Pre- and Post-Petition Collateral.

2.     The Debtor further acknowledges that all of the Debtor's cash and proceeds received hereafter are and will be TAB Bank's Cash Collateral.

C.     **Cross-Collateralization.**

1.     The Debtor acknowledges and stipulates that as security for all Pre-Petition Obligations, TAB Bank shall and does have a first-priority, senior, secured and priming lien against all Post-Petition Collateral, senior to all claims and liens of any kind, whether now existing or existing in the future, including but not limited to those referenced under Sections 364 and 507 of the Bankruptcy Code.

2.     The Debtor further acknowledges and stipulates that, as security for all Post-Petition Indebtedness, TAB Bank shall and does have a first-priority, senior, secured and priming lien against all Post-Petition Collateral, senior to all claims and liens of any kind, whether now existing or existing in the future, including but not limited to those referenced under Sections 364 and 507 of the Bankruptcy Code.

3.     TAB Bank's security interests in and liens on the Pre- and Post-Petition Collateral are and will be properly perfected and are and will be valid and enforceable first priority liens on and security interests in the Pre- and Post-Petition Collateral.

D.     **No Subordination.**  The Liens granted to TAB Bank hereunder or recognized pursuant hereto shall not be subordinated to or made *pari passu* with any other lien or security interest.

E.  **Adequate Protection.**  TAB Bank is entitled, pursuant to Bankruptcy Code Sections 361 and 363(e), to adequate protection of its interest in all Pre- and Post-Petition Collateral, including all Cash Collateral (collectively, the "Collateral"), including for the use of Cash Collateral, the use, sale, or lease of the Pre- and Post-Petition Collateral other than Cash Collateral, and for the terminating of the automatic stay under Bankruptcy Code § 362.  To the extent TAB Bank is not adequately protected by the Liens and Post-Petition Collateral, and in accordance with Bankruptcy Code § 364(c)(1), the Pre- and Post-Petition Indebtedness shall constitute claims (the "Superpriority Claims") with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including, without limitation, Bankruptcy Code Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), and 726, and shall at all times be senior to the rights of the Debtor, and any successor trustee or any creditor in this Chapter 11 Case or any subsequent proceedings under the Bankruptcy Code, including any subsequent proceedings under Chapter 7.  No cost or expense of administration under Bankruptcy Code Sections 105, 503(b), 507(b), or otherwise shall be senior to, or *pari passu* with, the Superpriority Claims.  Nothing herein shall affect or impair TAB Bank's right to seek additional adequate protection of its interests.

F.  **Perfection of Liens and Security Interests.**  The Pre-Petition Liens, Post-Petition Liens and Replacement Liens (hereinafter collectively, the "Liens") granted to TAB Bank pursuant to this Stipulation or recognized hereunder shall constitute valid and duly perfected security interests and liens, and TAB Bank shall not be required to file or serve financing statements, mortgages, notices of lien, or similar instruments in respect of the Collateral which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens; and the failure by the Debtor to execute any documentation relating to the Liens shall in no way affect the validity, perfection, or priority of such Liens.  If, however, TAB Bank in its sole discretion shall determine to file any such financing statements, mortgages, notices of lien, or similar instruments, or to otherwise confirm perfection of such Liens, the Debtor is directed to cooperate with and assist in such process, and

the stay and restrictions imposed by Bankruptcy Code Sections 362(a) and/or 549 are hereby lifted and waived to allow the Debtor and/or TAB Bank to execute, file, and record a certified copy of this Order or any such financing statements, mortgages, notices of lien, or similar instruments.

I declare under penalty of perjury under the laws of the State of California that the foregoing statements in this declaration are true and correct.

Dated: June 22, 2015

By:     /s/ Alban Lang
                Alban Lang
                Vice President and CFO of Debtor